UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EMPLOYERS MUTUAL CASUALTY COMPANY

CIVIL ACTION

VERSUS

NUMBER 12-437-JJB

IBERVILLE PARISH SCHOOL BOARD

**RULING**

This matter is before the Court on the Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(3) by the defendant Iberville Parish School Board ("IPSB").[1] Plaintiff Employers Mutual Casualty Company ("EMC") has filed an opposition to this motion.[2] For the reasons which follow, the defendant's motion is denied.

I. Factual and Procedural Background

This action arises from two separate Public Works Projects solicited by the IPSB under Louisiana's Public Bid Law.[3] The IPSB solicited bids for two projects at Plaquemines High School. JVV Consulting-Construction Management, LLC ("JVV") submitted the lowest bid for both projects and was awarded the contracts on the Admin/Gym Project and the Field House Project. Surety company EMC

---

[1] Rec. Doc. No. 7.

[2] Rec. Doc. No. 8.

[3] Title 38, Louisiana Revised Statutes.

Doc#48068

issued performance and payment bonds for both projects. Although the Field House Project was substantially completed, JVV was ultimately terminated by the IPSB alleging various defaults on both projects. Various subcontractors and suppliers to JVV for both projects made demand upon EMC under the respective bonds for payment for work performed and/or material supplied to the projects, alleging JVV had failed to pay. The ISPB also demanded that EMC resolve all lien claims recorded against the projects, which resulted in a cost of $393,122.92 for the Admin/Gym Project and $116,596.59 for the Field House Project.

Additionally, the IPSB demanded that EMC fulfill JVV's performance obligations by completing both projects in full. EMC and the IPSB executed a Takeover Agreement for the Admin/Gym Project wherein the IPSB agreed to dedicate all remaining contract balances and retainages for the Admin/Gym Project to its completion in exchange for EMC's agreement to complete the project at an alleged cost to EMC of $508,440.95. A certificate of substantial completion for the Admin/Gym Project was recorded in the Iberville Parish Mortgage Records on October 10, 2011. No further written agreements were entered into between the IPSB and EMC; however, EMC paid for certain punch list work to be completed on the Field House Project, which allegedly cost EMC $50,673.22.

EMC filed this lawsuit alleging it complied with the terms of the Takeover Agreement causing the Admin/Gym Project to be

completed and that the IPSB has failed to process the documentation provided and has improperly withheld $162,640.23 to which EMC is entitled. EMC also alleges the IPSB has improperly withheld $10,060.00 on the Field House Project to which EMC is entitled for completing this project.

The IPSB moved to dismiss under Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure. The IPSB argues that by entering into the Takeover Agreement on the Admin/Gym Project, EMC is bound by the forum selection clause contained in Article 13.4.3 of the General Conditions for the Contract of Construction which provided that the 18th Judicial District for the Parish of Iberville, State of Louisiana, was the sole and exclusive venue for any dispute arising out of the construction contract. The IPSB also argues that, should the Court determine the lack of a Takeover Agreement for the Field House Project nullifies the forum selection clause, then that claim should still be dismissed for lack of diversity jurisdiction since the amount in controversy for that project does not meet the statutory minimum of $75,000.00.

EMC has opposed this motion, arguing that it is not bound by the forum selection clause agreed to by the IPSB and JVV under the law and facts of this case. EMC counters that as a surety for JVV, EMC was not a party to the underlying contracts and is not bound by the clauses the IPSB relies upon, regardless of whether those clauses would be enforceable against JVV. EMC further argues that

Doc#48068 3

the IPSB has erroneously ignored the explicit language in EMC's bond which rejects restrictive forum selection clauses and provides for expansive jurisdiction over any suits regarding EMC's bonded obligations. EMC also contends that the IPSB speaks confusingly of both venue and jurisdiction and is really simply asking the Court to dismiss this suit to force EMC to file suit in the state court of the IPSB's choosing.

**II. Law and Analysis**

    **A.    Motion to Dismiss Pursuant to Rule 12(b)(1) & 12(b)(3)**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[4] The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[5] Rule 12(b)(3) provides for a motion to dismiss for improper venue.

    **B.    Applicability of Forum Selection Clauses**

Generally, under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a

---

[4]*St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009).

[5]*Raming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

"'heavy burden of proof.'"[6] Where a litigant in federal court attempts to have a case dismissed based on a contractual provision requiring suit to be brought in state court, the forum-selection clause should be upheld unless the party opposing its enforcement can show that the clause is unreasonable.[7] The clause might be unreasonable when, among other things, its inclusion is the product of "overreaching" or when its enforcement would "contravene a strong public policy of the forum state."[8]

Further, "a party's consent to jurisdiction does not necessarily constitute a waiver of the right of removal based on diversity of citizenship."[9] "Rather, a waiver of the right of removal 'must be clear and unequivocal' and may not be presumed from ambiguous contractual language."[10] Although a waiver of removal rights must be clear and unequivocal, it is not required to

---

[6] *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)(quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972)).

[7] *Id.* at 962-63 (citing *Int'l Software Sys. v. Amplicon, Inc.*, 77 F.3d 112, 114-15 (5th Cir. 1996)).

[8] *Id.* at 963.

[9] *City of New Orleans v. Municipal Administrative Services, Inc.*, 2002 WL 1870028, *1 (E.D. La. Aug. 14, 2002)(citing *City of New York v. Pullman, Inc.*, 477 F.Supp. 438, 441-42, n. 11 (S.D.N.Y. 1979)(citing *Keaty v. Freeport Indonesia*, 503 F.2d 955 (5th Cir. 1974))("An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion").

[10] *Id.*, quoting *City of New Orleans v. National Service Cleaning Corp.*, 1996 WL 419750, *4 (E.D. La. 7/24/96); *McDermott International Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1204 (5th Cir. 1991).

"include explicit words such as 'waiver of right of removal.'"[11] If a waiver of a removal clause is ambiguous, "'subject to opposing, yet reasonable interpretation,' the clause will be construed against its drafter."[12]

The IPSB argues that the parties did not alter the contract's forum selection clauses in the Takeover Agreement. The IPSB further argues that because the Takeover Agreement is expressly subject to the contract documents, EMC is bound by the terms and conditions contained in the underlying contracts, including the forum selection clause set forth in Article 13.4.3 of the General Conditions which states as follows:

> The 18th JDC in and for the Parish of Iberville, State of Louisiana shall have sole and exclusive jurisdiction in any action brought under the Contract. In the event of diversity for purposes of federal court jurisdiction or any other cause of action that may allow for federal court jurisdiction or venue, the Contractor, its surety, its Subcontractors and suppliers specifically waive any right or cause of action to be filed, transferred, or tried in any federal court. The sole court granted exclusive jurisdiction of any action is the 18th JDC in the Parish of Iberville, State of Louisiana.[13]

EMC points to the language of the performance portions of the bonds for the Admin/Gym Bond and the Field House Bond, which bonds were accepted and recorded by the IPSB in the Iberville Parish

---

[11] *Id.*, quoting *Waters v. Browning-Ferris Industries, Inc.*, 252 F.3d 796, 797 (5th Cir. 2001).

[12] *Id.*, quoting *Zapata Marin Service v. O/Y Finnlines, Ltd.*, 571 F.2d 208, 209 (5th Cir. 1978).

[13] Rec. Doc. No. 7-3, p. 3

Mortgage Records. The bonds explicitly reserved EMC's right to bring suit on the respective bonds "in any court of competent jurisdiction in the location in which the work or part of the work is located."[14]

In support of its motion, the IPSB relies on a decision by the district court for the Eastern District of Louisiana in *City of New Orleans v. National Service Cleaning Corp.*[15] In that case involving an alleged breach of contract on an asbestos abatement project, the language in the forum selection clause at issue provided that "[t]he contractor hereby consents to and stipulates to the personal jurisdiction and venue of the Civil District Court for the Parish of Orleans."[16] The court held that this language was specific to personal jurisdiction and venue, and therefore foreclosed the defendant's right to remove the case to federal court.[17] However, as EMC correctly points out, the *National Service* case is distinguishable from the case at bar because it did not involve applying the forum selection clause to a surety not a party to the underlying contract. The dispute in the *National Service* case was only between the principal contracting parties.

EMC argues that the decision in *Jefferson Parish Consolidated*

---

[14] See Admin/Gym Bond, § 9; Field House Bond, § 9.

[15] 1996 WL 419750 (E.D. La. 7/24/96).

[16] *Id.* at *1.

[17] *Id.* at *3.

*Garbage District No. 1 v. Waste Management of Louisiana* is more directly on point in this matter.[18] In that case, Waste Management was sued for breach of contract for allegedly billing plaintiffs in excess of the maximum fee allowed by the parties' contract. Travelers Casualty and Surety Company of America ("Travelers") was also named as a defendant because it was a surety on behalf of Waste Management. Travelers removed the action to federal court on the basis of diversity jurisdiction. Plaintiffs filed a motion to remand alleging the forum-selection clause in the Collection Contract made removal improper.[19]

The Collection Contract read that "any and all claims asserted by or against [Plaintiffs] arising under this contract and related thereto, shall be heard and determined in the Twenty-Fourth Judicial District Court for the Parish of Jefferson ... which court shall have exclusive jurisdiction and venue over such claims."[20] The court noted that "a contractual clause such as this can prevent a party from exercising its right to remove when the clause provides a ' "clear and unequivocal"' waiver of that right."[21] Further, the court noted that "removal rights are waived when the

---

[18] 2010 WL 1731204 (E.D. La. 4/28/10).

[19] *Id.* at *1.

[20] *Id.* at *2.

[21] *Id.*, quoting *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004)(quoting *McDermott v. Llodys Underwriters*, 944 F.2d 1199 (5th Cir. 1991); *Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796 (5th Cir. 2001)).

Case 3:12-cv-00437-JJB-RLB   Document 13   03/11/13   Page 8 of 13

contract establishes 'exclusive venue.'"[22] The court held that "[b]ecause the language of the Collection Contract clearly contains a clause establishing 'exclusive' venue in state court, the clause provides a valid waiver of removal rights as to disputes related to that contract."[23]

However, this did not end the inquiry. The court noted that the performance bond issued by Travelers which guaranteed the underlying Collection Contract in the event that Waste Management would fail to perform, stated that the Collection Contract "is made a part hereof and incorporated herein by reference, *except that nothing said therein shall alter, enlarge, expand, or otherwise modify the term of the bond as set out below.*"[24] The court continued:

> As such, although the Collection Contract is incorporated by reference in Travelers' performance bond, the performance bond operates as a guarantee of the underlying collection contract. The Collection Contract obligated Waste Management to collect trash, but if Waste Management failed to perform, Travelers would not then have the same obligation to collect trash; rather, Travelers would have the option of performing Waste Management's duties, paying the "amount of the bond penalty," or paying the amount necessary to cure Waste Managements [sic] non-performance. **Any waiver of removal rights that Waste Management may have agreed to in the Collection Contract does not attach to Travelers, and**

---

[22]*Id.* citing *City of New Orleans*, 376 F.3d at 504.

[23]*Id.*

[24]*Id.* (emphasis in original).

Doc#48068                                9

Case 3:12-cv-00437-JJB-RLB   Document 13   03/11/13   Page 9 of 13

**Travelers' removal of this action was therefore proper.**[25]

The Court finds that the reasoning in *Waste Management* is directly applicable to the case at bar. While the language of the forum selection clause in the underlying contract between the IPSB and JVV does include the Contractor's surety, JVV did not have the authority to bind EMC to terms of a contract to which it was not a party and never agreed. Furthermore, under Louisiana law, a surety bond is an accessory contract.[26] The bond is not the principal contract and serves only to guarantee the performance of the underlying contract. The bond is subject to the same rules of contractual interpretation as contracts in general.[27]

The performance bonds on the Admin/Gym Project and the Field House Project do not contain the restrictive language of the forum-selection clauses found in the underlying contracts. In fact, the bonds allow for suits to be brought "in any court of competent jurisdiction in the location in which the work or part of the work is located."[28] EMC argues, and the Court agrees, that the more expansive and permissive jurisdictional terms contained in both bonds, executed after the initial contracts between the IPSB and

---

[25] *Id.* (emphasis added).

[26] La. C.C. art. 1913.

[27] See *Guaranty Bank & Trust Co. v. Jones*, 489 So.2d 368, 370 (La. App. 5 Cir. 1985), citing *Keller Industries v. Deauville Consultants*, 459 So.2d 636 (La. App. 5th Cir. 1984).

[28] Rec. Doc. No. 8-1, p. 2; Rec. Doc. No. 8-2, p. 5.

Doc#48068 10

JVV, clearly show EMC's intent not to be bound by the forum-selection clauses found in the underlying contracts. Furthermore, The Takeover Agreement expressly states: " The Obligee acknowledges that the Surety, by its execution of this Agreement, is acting in its capacity as the surety for the Former General Contractor in making arrangements for the performance and completion of the Contract, **and that the Surety is not assuming any obligations or liabilities beyond those set forth in the Bond."**[29] That paragraph continues: "As to completion of the Contract, except as otherwise provided in this Agreement, the Surety is bound to all obligations of and entitled to all rights, title and interest of the Former General Contractor in and to the Contract on all respects as if the Surety were the original party to the Contract."[30] It is clear from the plain reading of this line that this portion of the contract refers to the completion of the work that is the subject of the underlying contract by the introductory phrase, "[a]s to the completion of the Contract, ..." It does not clearly and unequivocally signal a waiver of EMC's removal rights.

The IPSB has argued that the forum selection clause in the underlying contract applies to EMC by virtue of the Takeover Agreement, which states that it is subject to the underlying contract. However, the first page of the Takeover Agreement

---

[29]Rec. Doc. No. 7-6, p. 2, ¶ 1 (emphasis added).

[30]*Id.*

Doc#48068 11

clearly reads: "the Surety is willing to undertake the completion of the Contract in accordance with the terms of the Bond, the Contract, including all modifications thereto, and this Agreement; ..."[31]  Based on this language, it is clear that the Takeover Agreement is also subject to the terms of the Bond, which on the issue of jurisdiction and venue are in direct conflict with the forum selection clause of the original contract.  At the very least, this creates an ambiguity as to the application of the forum selection clause to EMC, which must be resolved in favor of EMC. The fact that the Takeover Agreement also states that it is subject to the terms set forth in the bond shows that EMC did not intend to waive its removal rights.

    Therefore, the Court finds that under the law and facts of this case, the defendant's motion to dismiss should be denied.

---

[31]Rec. Doc. No. 7-6, p. 1.

## III. Conclusion

For the reasons set forth above, the IPSB's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(3) is hereby denied.

IT IS SO ORDERED.

Baton Rouge, Louisiana, March 11, 2013.

                                        _____
                                        JAMES J. BRADY, JUDGE
                                        MIDDLE DISTRICT OF LOUISIANA